# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

HPHC INSURANCE COMPANY, INC.,     )
)
        Plaintiff,          )      No. 17-87C
)
v.                             )
)      Judge Lydia Kay Griggsby
THE UNITED STATES OF AMERICA,     )
)
        Defendant.       )
_____ )

## UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS

CHAD A. READLER
Acting Assistant Attorney General

RUTH A. HARVEY
Director
Commercial Litigation Branch

KIRK T. MANHARDT
Deputy Director

/s/ Marc S. Sacks
MARC S. SACKS
CHARLES E. CANTER
TERRANCE A. MEBANE
FRANCES M. MCLAUGHLIN
L. MISHA PREHEIM
PHILLIP M. SELIGMAN
Commercial Litigation Branch
Civil Division
United States Department of Justice

ATTORNEYS FOR THE UNITED
STATES

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... ii

ARGUMENT ....................................................................................................................1

I.     This Court Has Determined That a Risk Corridors Plaintiff
Cannot State a Claim for Relief ...........................................................................1

II.    If the Court Reaches the Question, Section 1342 Does Not
Obligate the Government to Use Taxpayer Funds to Make
Risk Corridors Program Payments ......................................................................5

       A.    HPHC's Allegations about the Purpose of the ACA Do Not
Alter This Court's Interpretation of Section 1342 ...................................6

       B.    Congress Did Not Appropriate Risk Corridors Program
Payments in Excess of Risk Corridors Collections..................................8

       C.    The Spending Laws Limit Risk Corridors Program Payments
to Risk Corridors Collections.................................................................10

III.    HPHC Has No Contractual Right to Risk Corridors Program Payments .........12

CONCLUSION ...............................................................................................................14

**Cases**

*ARRA Energy Co. I v. United States*,
    97 Fed. Cl. 12 (2011) .......................................................................12

*Blue Cross and Blue Shield of N. C. v. United States*,
    No. 16-651C, -- Fed. Cl. --, 2017 WL 1382976 (Apr. 18, 2017) ............................ *passim*

*Brooks v. Dunlop Mfg., Inc.*,
    702 F.3d 624 (Fed. Cir. 2012) ...............................................................12, 13

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*,
    381 F.3d 1178 (Fed. Cir. 2004)................................................................3

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*,
    467 U.S. 837 (1984)........................................................................2

*Collins v. United States*,
    15 Ct. Cl. 22 (1879) .....................................................................8, 9

*Crandon v. United States*,
    494 U.S. 152 (1990)........................................................................7

*Fernandez-Vargas v. Gonzales*,
    548 U.S. 30 (2006)..................................................................... 11-12

*Fisher v. United States*,
    15 Ct. Cl. 323 (1879) ................................................................... 9-10

*Health Republic Ins. Co. v. United States*,
    129 Fed. Cl. 757 (2017) ....................................................................5

*Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States*,
    48 F.3d 1166 (Fed. Cir. 1995) ...........................................................6, 8, 9, 11

*Kilpatrick v. Principi*,
    327 F.3d 1375 (Fed. Cir. 2003) .............................................................7

*Land of Lincoln Mut. Health Ins. Co. v. United States*,
    129 Fed. Cl. 81 (2016), *appeal docketed*,
    No. 17-1224 (Fed. Cir. Nov. 16, 2016) .................................................... *passim*

*Maine Community Health Options v. United States*,
No. 16-967C (Fed. Cl.) .................................................................15, 36

*Moda Health Plan, Inc. v. United States*,
130 Fed. Cl. 436 (2017), *appeal docketed*,
No. 17-1994 (Fed. Cir. May 9, 2017) ........................................5, 14

*N.Y. Airways, Inc. v. United States*,
369 F.2d 743 (Ct. Cl. 1966) .................................................... 13-14

*Prairie Cnty., Montana v. United States*,
782 F.3d 685 (Fed. Cir. 2015) ...........................................................8

*Rodriguez v. United States*,
480 U.S. 522  (1987) ..........................................................................6

*Slattery v. United States*,
635 F.3d 1298 (Fed. Cir. 2011) ......................................................8, 9

*United States Trust Co. of New York v. New Jersey*,
431 U.S. 1 (1977) .............................................................................13

*United States v. Dickerson,*
310 U.S. 554 (1940) ...........................................................................8

*United States v. Fisher*,
109 U.S. 143 (1883) .........................................................................10

*United States v. Mitchell*,
109 U.S. 146 (1883) ...........................................................................8

*United States v. Mitchell*,
463 U.S. 206 (1983) ......................................................................8, 9

## <u>Statutes</u>

42 U.S.C. § 18041 ....................................................................................2

42 U.S.C. § 18062 ................................................................................2, 5

The Patient Protection and Affordable Care Act ("ACA"),
Pub. L. No. 111-148 (2010), 124 Stat. 119 ............................ *passim*

Section 1342................................................................... *passim*

Consolidated and Further Continuing Appropriations Act of 2015 (Pub. L. No. 113-235) ("2015 Spending Law") ........................................................................5

Consolidated Appropriations Act, 2016 (Pub. L. No. 114-113) ("2016 Spending Law") ...............................................................................5

Pub. L. No. 115-31, div. H, title II, § 223, __ Stat. ___, ___ (May 5, 2017)..............................5-6

### **Regulations**

45 C.F.R. § 153.510 .............................................................................................2

### **Legislative Materials**

160 Cong. Rec. H9838 (daily ed. Dec. 11, 2014) ....................................................6, 10

### **Other**

GAO B-173832 (Aug. 1, 1975) ...................................................................10

GAO, B-325630, 2014 WL 4825237 (Sept. 30, 2014) ..................................................12

## UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS

As this Court has already determined, Risk Corridors Program Payments under section 1342 of the Patient Protection and Affordable Care Act ("ACA") are not presently due and neither section 1342 nor its implementing regulations create a contractual obligation to make Risk Corridors Program Payments. *Blue Cross and Blue Shield of N. C. v. United States* ("*BCBSNC*"), No. 16-651C, -- Fed. Cl. --, 2017 WL 1382976 (Apr. 18, 2017). On April 19, 2017, HPHC requested additional time to file its reply and response ("Pl. Rep.") to "permit the parties to address this Court's decision in Blue Cross," Dkt. 14, yet, in 30 pages of briefing, HPHC fails to address this Court's determinations on the merits and fails to identify a single fact to distinguish this case from BCBSNC. Indeed, the alleged facts and asserted claims are materially the same. Accordingly, for the reasons set forth in this Court's *BCBSNC* decision, this case should be dismissed under RCFC 12(b)(6).[1] Moreover, section 1342 does not obligate the United States to use taxpayer funds to make Risk Corridors Program Payments, U.S. MTD at 18-42, and the Court may dismiss the case on this ground as well.

## I.    This Court Has Determined That a Risk Corridors Plaintiff Cannot State a Claim for Relief

In *BCBSNC*, this Court found that the Department of Health and Human Services' ("HHS") three-year payment methodology is reasonable and entitled to deference. As a result, BCBSNC did not state a claim on which relief can be granted. The same must be true for HPHC in its statutory claim (Count I). HPHC's response and reply does not even attempt to distinguish its claim from that brought by BCBSNC (or other risk corridors plaintiffs).

---

[1] As explained in our Motion to Dismiss ("U.S. MTD"), Dkt. 13, HPHC's Amended Complaint ("Complaint"), Dkt. 11, is also subject to dismissal on jurisdictional grounds under Rule 12(b)(1). U.S. MTD at 15-18.

As explained in our Motion to Dismiss, neither section 1342 nor its implementing regulations specify a due date for Risk Corridors Program Payments. U.S. MTD at 13-14, 16-18. This Court has agreed. *BCBSNC*, 2017 WL 1382976, at *14. A "plain reading" of section 1342 demonstrates that Congress did not address the timing of Risk Corridors Program Payments. *Id.* Thus, the "statute is silent" and "ambiguous" with respect to timing. *Id.* at *15. Recognizing Congress's delegation of authority to HHS to promulgate regulations to implement the risk corridors program, *id.* (quoting 42 U.S.C. § 18041), this Court considered 45 C.F.R. § 153.510 and concluded that a "plain reading" of this regulation also "makes clear that HHS did not establish a deadline" for Risk Corridors Program Payments. *BCBSNC*, 2017 WL 1382976, at *15.

The Court then considered HHS's three-year payment framework. *Id.* at *15-*16. Under the framework, HHS makes pro-rata Risk Corridors Program Payments (if collections are insufficient to make full payments) and then makes up the shortfall in subsequent years. *Id.* at *16. This Court concluded:

> Given Congress's express and broad delegation of authority to HHS to implement the Risk Corridors Program, HHS's policy regarding the timing of the Risk Corridors Program Payments is reasonable and consistent with Section 1342. 42 U.S.C §§ 18041, 18062. The policy affords HHS the full three years of this temporary program to make up any shortfall in the Risk Corridors Program Payments as funds become available. Given the absence of a statutory deadline for making the Risk Corridors Program Payments to issuers—and the temporary nature of the Risk Corridors Program—HHS's policy is sound and consistent with Section 1342.

*BCBSNC*, 2017 WL 1382976, at *16 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842-43 (1984)); *accord Land of Lincoln Mut. Health Ins. Co. v. United States*, 129 Fed. Cl. 81, 107-08 (2016), *appeal docketed*, No. 17-1224 (Fed. Cir. Nov. 16, 2016). Ignoring *BCBSNC*, HPHC asserts that HHS's three-year payment methodology does not merit deference. Pl. Rep. at 10-14. But HPHC identifies no error in this Court's reasoning.

In *BCBSNC*, as Judge Lettow did in *Land of Lincoln*, this Court rejected arguments that HHS must make full, annual Risk Corridors Program Payments because (1) anything less would undermine the purpose of section 1342; (2) the ACA's Risk Corridors Program is to be "based on" the Medicare Part D risk corridors programs; or (3) HHS calculates Risk Corridors Program Payments and charges annually. *BCBSNC*, 2017 WL 1382976, at *16-*17.

Rejecting BCBSNC's "purpose" argument, this Court found that "pro-rata Risk Corridors Program Payments satisfy the stated purpose and objectives of the Risk Corridors Program, by protecting issuers from uncertainties regarding the cost of health insurance claims during the first three years of the ACA's Exchanges." *Id.* at *16. Judge Lettow agreed: "HHS's payments in due course, not necessarily annually, to the extent funds are available from 'payments in' without resort to appropriated funds, can still serve the program . . . . Lincoln's argument based on broad purposes is not persuasive." *Land of Lincoln*, 129 Fed. Cl. at 107 (quoting *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1192 (Fed. Cir. 2004)) ("[P]olicy considerations cannot override our interpretation of the text and structure of [a statute], except to the extent that they may help to show that adherence to the text and structure would lead to a result so bizarre that Congress could not have intended it.").

Regarding Medicare Part D, this Court explained that "[w]hile there is no dispute that the Risk Corridors Program is based upon Medicare Part D, this fact, alone, does not demonstrate that Congress intended for HHS to pay the Risk Corridors Program Payments owed to issuers in full, upon an annual basis." *BCBSNC*, 2017 WL 1382976, at *16. This Court found no "requirement in Section 1342 or elsewhere in the ACA that HHS must administer the Risk Corridors Program in the same manner as the Medicare Part D risk corridors program." *Id.*; *see also Land of Lincoln*, 129 Fed. Cl. at 105 (explaining that while Medicare Part D "specifically requires that '[f]or each

plan year, the Secretary shall establish a risk corridor . . .,'" "Congress chose to omit 'for each plan year' in Section 1342"); *id.* ("unlike Section 1342, the Medicare Program explicitly provides for authorization of appropriations").

Moreover, this Court held that HHS's annual calculation of the amount of Risk Corridors Program Payments due and owed did not evidence "an obligation upon the part of HHS to make full Risk Corridors Program Payments upon an annual basis." *BCBSNC*, 2017 WL 1382976, at *16. This Court explained that "any deadline for making the Risk Corridors Program Payments to issuers could be no earlier than the December of the following year, because HHS must accommodate state-operated reinsurance and risk adjustment programs and include risk adjustment and reinsurance payments received in the calculation of risk corridors charges and payments." *Id.* at *17. Thus, "HHS has reasonably exercised its discretion with respect to the timing of Risk Corridors Program Payments to issuers, by making a pro-rata payment and requiring that the government make up any outstanding payments owed during the subsequent years of the program." *Id.* The *Land of Lincoln* Court concurred: While "Paragraph 1342(b)(1) contemplates that qualified health plans will be reporting costs on an annual basis," the "methodology in Subsection 1342(b) governs the amounts that HHS must pay to and receive from qualified health plans, [and] it does not establish when these payments are to be made." 129 Fed. Cl. at 104.

In light of the statute, regulations, and the three-year payment framework, this Court correctly concluded that "HHS has no obligation under Section 1342 or its implementing regulations to pay the full amount of [an insurer's] Risk Corridors Program Payments until, at a minimum, the agency completes its calculations for payments due for the final year of the Risk Corridors Program. *BCBSNC*, 2017 WL 1382976, at *16. That deadline "will not occur until December 2017 or January 2018." *Id.* Because HHS, under its three-year framework, has no

obligation to make full, annual Risk Corridors Program Payments—if such an obligation under section 1342 exists at all—Risk Corridors Program Payments "are not 'presently due.'" *Id.* at *17.

## II. If the Court Reaches the Question, Section 1342 Does Not Obligate the Government to Use Taxpayer Funds to Make Risk Corridors Program Payments

In *BCBSNC*, the Court did not "reach the question of whether the government may, ultimately, limit [Risk Corridors Program Payments] to the amount of collections." *BCBSNC*, 2017 WL 1382976, at *21. As explained in our Motion to Dismiss, section 1342 does not obligate the United States to make Risk Corridors Program Payments to insurers in excess of collections. U.S. MTD at 18-42. The text and structure of section 1342 demonstrate that the Risk Corridors Program is self-funded: Congress directed HHS to "establish and administer a program of risk corridors," 42 U.S.C. § 18062(a), and then specified that HHS must provide "under the program" for "payments in" and "payments out." 42 U.S.C. § 18062(b).

Furthermore, in contrast to dozens of other provisions in the ACA as well as the risk corridors program under Medicare Part D, Congress did not appropriate funds, authorize appropriations, or otherwise indicate that payments under section 1342 were an obligation of the United States. *See Land of Lincoln*, 129 Fed Cl. at 104-07.[2]

And when Congress came to appropriate funds for Risk Corridors Program Payments for the years in which payments could actually be made, it appropriated only collections and expressly restricted the use of other funds. *See* Pub. L. No. 113-235, div. G, title II, § 227, 128 Stat. 2130, 2491 (2014) (U.S. MTD A45); Pub. L. No. 114-113, div. H, title II, § 225, 129 Stat. 2242, 2624 (2015) (U.S. MTD A53); Pub. L. No. 115-31, div. H, title II, § 223, ___ Stat. ___, ___ (May 5,

---

[2] Judges Sweeney and Wheeler also recognized that Congress did not appropriate funds for Risk Corridors Program Payments in the ACA. *Health Republic Ins. Co. v. United States*, 129 Fed. Cl. 757, 762 (2017); *Moda Health Plan, Inc. v. United States*, 130 Fed. Cl. 436, 442 (2017), *appeal docketed*, No. 17-1994 (Fed. Cir. May 9, 2017).

2017) (the "Spending Laws"). The purpose of the Spending Laws was to ensure that "the federal government will never pay out more than it collects from issuers over the three year period risk corridors are in effect." 160 Cong. Rec. H9307-1, H9838 (daily ed. Dec. 11, 2014) (U.S. MTD A47).

In short, HPHC's Count I statutory claim fails because Congress did not create a freestanding payment obligation when it enacted section 1342, and Congress, in appropriating funds for any Risk Corridors Program Payments to be made, has "directly spoken" to limit the extent of the United States' liability to the aggregate amount of collections from profitable insurers. *Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States*, 48 F.3d 1166, 1170 (Fed. Cir. 1995).

### A.    HPHC's Allegations about the Purpose of the ACA Do Not Alter This Court's Interpretation of Section 1342

As it did in its motion for summary judgment, HPHC again urges this Court to look beyond the plain language of the statute to consider Congress's purpose in passing the Risk Corridors Program. Pl. Rep. at 4-5, 7, 12. However, this Court has already concluded that HHS's implementation satisfies the statute's purposes. *See supra* p. 3; *BCBSNC*, 2017 WL 1382976, at *16. The United States also addressed this argument in its Motion to Dismiss. U.S. MTD at 32-34. As we explained, reliance on the general purposes of the Risk Corridors Program cannot overcome Congress's decision to mitigate losses only to the extent of collections or HHS's three-year payment methodology. "[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987) (emphasis in original).

HPHC now relies upon *Crandon v. United States*, 494 U.S. 152, 158 (1990), and *Kilpatrick v. Principi*, 327 F.3d 1375, 1384 (Fed. Cir. 2003), in support of its "purpose" argument. Pl. Rep. at 4. *Crandon* involved 18 U.S.C. § 209, "one of almost two dozen statutory provisions addressing bribery, graft, and conflicts of interest that were revised and compiled . . . in 1962." 494 U.S. at 158-59. That statute was ambiguous, as its "two prohibitions . . . [did not] directly specif[y] when a payment must be made or received." *Id.* at 159. In examining legislative history, the Court "attach[ed] greater significance to two other changes that Congress made [to two other related statutes] when it revised the bribery and conflict laws in 1962." *Id.* at 163. The Court concluded: "In both of these [other statutory] provisions Congress used unambiguous language . . . the absence of comparable language in § 209(a) indicates that Congress did not intend to broaden the pre-existing coverage of that provision." *Id.* at 163-64.

While the Supreme Court referenced legislative purpose, its decision ultimately came down to congressional intent as demonstrated by a comparison of the statutory language in question with the language in related statutes. The same is true here. Congress used "unambiguous language" in the Medicare Part D risk corridors program and in other ACA statutes to appropriate funds or authorize appropriations. U.S. MTD at 19-21. The "absence of comparable language" in section 1342 demonstrates Congress's intent that the Risk Corridors Program be self-funded.

*Kilpatrick*, which involved a veteran's right to compensation for injury, stands for nothing more than the principle that courts interpret statutes to divine congressional intent. 327 F.3d at 1382 ("[I]t is clear that Congress did not intend to withdraw the previously available housing benefit from veterans in Mr. Kilpatrick's position."). Here, section 1342 and the Spending Laws, by their language, demonstrate Congress's intent that Risk Corridors Program Payments will not

exceed risk corridors collections. HPHC's reliance on the alleged broader purpose of the Risk Corridors Program (or the ACA) does not change that conclusion.[3]

## B. Congress Did Not Appropriate Risk Corridors Program Payments in Excess of Risk Corridors Collections

HPHC asserts, variously citing *United States v. Mitchell*, 463 U.S. 206 (1983), *Slattery v. United States*, 635 F.3d 1298 (Fed. Cir. 2011) (en banc), and *Collins v. United States*, 15 Ct. Cl. 22 (1879), that Congress's express exercise of its appropriations powers here is irrelevant and that a plaintiff need only identify a substantive law mandating payment. *See*, *e.g.*, Pl. Rep. at 16-18 & n.20, 21. That is not the law, as nearly 150 years of Supreme Court and Federal Circuit precedent demonstrate. *See* U.S. MTD at 25-28, 30-31, 36-37 (citing *United States v. Dickerson*, 310 U.S. 554 (1940); *United States v. Mitchell*, 109 U.S. 146 (1883); *Highland Falls*; *Prairie Cnty., Montana v. United States*, 782 F.3d 685, 689 (Fed. Cir. 2015); *etc.*). As explained above and in our Motion to Dismiss, section 1342 alone does not create a payment obligation; it does not even permit a payment in the absence of an appropriation. U.S. MTD at 18-22. The extent of any obligation to make Risk Corridors Program Payments, therefore, can only be determined by reference to the appropriations laws that permit payment.

This case differs from those cases HPHC attempts to rely upon to erroneously claim that courts have found the United States liable notwithstanding a lack of appropriations. *See* Pl. Rep.

---

[3] HPHC argues: "Absent the RCP, insurers would have had to charge far higher premiums to insulate themselves against the risk of *adverse selection* (new enrollment by previously uninsured individuals disproportionately unhealthier, and thus more expensive to insure, than the existing pool of insureds)." Pl. Rep. at 1; *see also id.* at 9. HPHC cites no evidence – factual or legal – for this assertion, which this Court should not credit. In any event, the United States did not mandate or control issuer plan pricing. Similarly, HPHC's allegations of declining participation by issuers on the Exchanges beginning in 2015 are not relevant to a determination of Congress's intent in passing section 1342 in 2010. *See* Pl. Rep. at 6-8. And, HPHC continues to participate on the Exchanges.

at 16-21.  For example, in *Collins*, Congress passed a statute "for the relief of" a retired Army officer, authorizing the President to reinstate and retire him at the rank of major. 15 Ct. Cl. at 23. Once the President acted to reinstate and retire the plaintiff, the court held the United States was liable for retirement pay from the date of retirement because, the Court concluded, Congress "intended to confer upon him an immediate benefit." *Id.* at 34.  While Congress did not specifically appropriate funds for that officer's retirement pay, the court explained it was not required to consider the impact of the Appropriations Clause because, at that time, "the constitutional prohibition" applied "to the judgment as it did to the claim upon which it is founded." *Id.* at 36. Thus, the Court recognized that, under the scheme then in effect, it was not required to consider the appropriations question because a specific appropriation was still required before the plaintiff would be paid.

Similarly, other cases HPHC attempts to rely upon show only that the United States may be liable in damages for breach where it has intended to create a valid fiduciary duty, *Mitchell*, 463 U.S. 206, or intended to create contractual obligations, *Slattery*.  Even in those cases, the question at all times remains whether Congress, when enacting a statute, intended to create a judicially enforceable obligation.  Moreover, where Congress has created a payment obligation, it is free to modify that obligation in subsequent appropriations acts.  *Highland Falls*, 48 F.3d at 1170.  "The whole question depends on the intention of congress as expressed in the statutes." *Mitchell*, 109 U.S. 146, 150; *Fisher v. United States,* 15 Ct. Cl. 323, 328 (1879) ("In seeking to ascertain the meaning of a statute, it is the will of the legislature which must be determined, and

the latest will of the latest legislature must control all previous enactments.").[4]  As explained, Congress did not create a payment obligation when it enacted section 1342.

HPHC's reliance on a non-controversial GAO opinion does not help its cause.  Pl. Rep. at 19 (citing B-173832 (Aug. 1, 1975)).  The question remains whether Congress intended to create an enforceable obligation.   In the cited opinion, for example, the GAO explained (directly following the excerpt HPHC quotes): "Turning to the instant matter, it seems very clear that several provisions of the [law] do contemplate Federal financing so as to constitute sufficient authorization for appropriations.   For example, [the statutory provisions] authorize VA to provide various facilities and services at national cemeteries, expressly including in subsection (e) authority to contract for the care and maintenance of cemeteries."  Here, nothing in section 1342 "contemplates Federal financing" for Risk Corridors Program Payments in excess of risk corridors collections.  And, even if section 1342 did contemplate such funding, the Spending Laws unequivocally rescinded the obligation before any Risk Corridors Program Payments became due.

## C.  The Spending Laws Limit Risk Corridors Program Payments to Risk Corridors Collections

In our Motion to Dismiss, we explained that by enacting the 2015 Spending Law before the first Risk Corridors Program Payments were calculated, Congress unequivocally appropriated only collections and expressly restricted the use of other funds.  U.S. MTD at 22-28.  The purpose of this restriction was to ensure that "the federal government will never pay out more than it collects from issuers over the three year period risk corridors are in effect."  160 Cong. Rec. H9307-1, H9838 (daily ed. Dec. 11, 2014).

---

[4] In *Fisher*, the Court of Claims entered a *pro forma* judgment for the plaintiff to facilitate Supreme Court review and that Court likewise held, "the later act must therefore prevail."  *United States v. Fisher*, 109 U.S. 143, 146 (1883).

In its reply and response, HPHC demonstrates a fundamental misunderstanding of Congress's action. For example, HPHC's assertion that Congress could create a benefits program obligation in passing section 1342, but could not rescind that obligation by enacting the 2015 Spending Law before any benefits came due, is unsupported by law. *See* Pl. Rep. at 22 ("a later Congress's restriction on *HHS's ability* to make [risk corridors programs] payments is legally irrelevant") (citing no law). And it is squarely contradicted by *Highland Falls*. 48 F.3d at 1168-71. As we explained, the Spending Laws were not merely a restriction on HHS, they demonstrate Congress's intent that the only funds available (whether from HHS or this Court) for Risk Corridors Program Payments are risk corridors collections. U.S. MTD at 22-28.

HPHC also incorrectly argues that HHS's alleged obligation to pay HPHC Risk Corridors Program Payments (for calendar year 2014) arose before the fiscal year 2015 Spending Law was passed (on December 16, 2014, *before* the end of calendar year 2014). Pl. Rep. at 23-24. In *BCBSNC*, however, this Court held that "any deadline for making the Risk Corridors Program Payments to issuers could be no earlier than the December of the *following year*, because HHS must accommodate state-operated reinsurance and risk adjustment programs and include risk adjustment and reinsurance payments received in the calculation of risk corridors charges and payments." *BCBSNC*, 2017 WL 1382976, at *17 (emphasis added); *see also* U.S. MTD at 13-14, 35-36. Moreover, HPHC's counsel (while representing the plaintiff in *Maine Community Health Options v. United States*, No. 16-967C (Fed. Cl.)) conceded that the earliest a claim could accrue for risk corridors payments was July 2015. U.S. MTD at 15 n.9 & A217-18.

HPHC now relies upon *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006), but that case, which involved "the application of new law to continuously illegal action," states merely the obvious proposition that "a statute shall not be given retroactive effect unless such construction is

required by explicit language or by necessary implication." *Id.* at 37 (citation omitted), 46. As we have explained, the 2015 Spending Law was not retroactive because it was enacted not only before HHS made initial Risk Corridors Program Payments, but before the end of the 2014 calendar year. In any event, as the United States has explained, the GAO opined on exactly what Congress would have to do in order to appropriate funds in the fiscal year 2015 budget for HHS to make Risk Corridors Program Payments. U.S. MTD at 9-12, 24-25, 35 (citing GAO, B-325630, 2014 WL 4825237 (Sept. 30, 2014)). Congress acted on that guidance by passing the 2015 Spending Law to ensure that Risk Corridors Program Payments could not exceed risk corridors collections. HPHC's contention that the Spending Laws are being applied retroactively is not supported by fact or law.

Count I should be dismissed.

## III.    HPHC Has No Contractual Right to Risk Corridors Program Payments

In *BCBSNC*, this Court dismissed the identical implied-in-fact contract claim that HPHC asserts here. 2017 WL 1382976, at \*18-\*19. Noting the long-standing presumption "that statutes are not intended to create any vested contractual rights," *id.* at \*18 (citing *ARRA Energy Co. I v. United States*, 97 Fed. Cl. 12, 27 (2011)), this Court first looked to "the text of Section 1342" and then to "the circumstances surrounding the passage of Section 1342" to discern any "intent to bind the government contractually," *id.* (citing *Brooks v. Dunlop Mfg., Inc.*, 702 F.3d 624, 631 (Fed. Cir. 2012)).

With respect to the text of section 1342, "[n]either Section 1342 nor its implementing regulations contain language that creates a contractual obligation with respect to the Risk Corridors

Program Payments."[5]  *BCBSNC*, 2017 WL 1382976, at *18.  Turning to "the circumstances surrounding the enactment of the ACA," this Court found that BCBSNC, like HPHC here, identified nothing "that would manifest an intent upon the part of Congress to contractually bind the government."  *Id.*; *see also* U.S. MTD at 43-46.  This Court reached that conclusion in *BCBSNC* after considering the same conduct and statements as HPHC proffers here.  2017 WL 1382976 at *19.

HPHC incorrectly asserts that the United States takes the position that the government's "intent to contract *must be expressly stated* in the statute."  Pl. Rep. at 25.  Our motion acknowledged, citing *Brooks*, that the "Federal Circuit has made clear that intent to contract in a statute is determined by looking first to the text and then to the legislative history."  U.S. MTD at 44.  Our argument, consistent with this Court's analysis in *BCBSNC*, demonstrates that there is nothing in the text of the statute, legislative history, or surrounding circumstances that demonstrates an intent by Congress to contract for Risk Corridors Program Payments.  HPHC also ignores that reliance on an alleged "raft of HHS assurances," Pl. Rep. at 25-26, cannot demonstrate congressional intent to contract.

In addition, in *BCBSNC* this Court distinguished *New York Airways v. United States*, *see* Pl. Rep. at 26, 28, noting that Congress had recognized the existence of a contractual obligation in that case and that the payments at issue there were in compensation for the provision of services

---

[5] HPHC mischaracterizes (or misunderstands) *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1 (1977), which is not relevant here.  *See* Pl. Rep. at 24 n.25.  The issue in that case was whether a New Jersey statute (which repealed a statutory covenant made between New Jersey and New York) violated the Contract Clause of the United States Constitution.  431 U.S. at 3.  The statute at issue created a contract between the two states and Port Authority bondholders by express language:  "The 2 States covenant and agree with each other and with the holders of any affected bonds . . . ."  *Id.* at 18 (citation omitted).  Even if *United States Trust* applied here, there is nothing in section 1342 suggesting that Congress "covenants" with issuers.

to the government, unlike payments under the risk corridors program.  2017 WL 1382976, at *19 n.8 (discussing *N.Y. Airways v. United States*, 369 F.2d 743, 751-52 (Ct. Cl. 1966)); *but see Moda*, 130 Fed. Cl. at 463-64 (same); *see also* U.S. MTD at 45-46 (discussing errors in *Moda*'s implied contract finding).  Finally, this Court, like Judge Lettow, *Land of Lincoln*, 129 Fed. Cl. at 113, reasoned that, because neither section 1342 nor its implementing regulations required HHS to make full, annual Risk Corridors Program Payments, insurers cannot demonstrate a breach of any alleged implied contract based on either the statute or the regulations.  *BCBSNC*, 2017 WL 1382976, at *19.  In short, Count II, HPHC's implied-in-fact contract claim, fails as a matter of law and should be dismissed.

## CONCLUSION

Based upon the foregoing, the Court should dismiss HPHC's Complaint, deny HPHC's motion for summary judgment, and enter judgment for the United States.

Dated: May 15, 2017

Respectfully submitted,
CHAD A. READLER
Acting Assistant Attorney General

RUTH A. HARVEY
Director
Commercial Litigation Branch

KIRK T. MANHARDT
Deputy Director

/s/ Marc S. Sacks
MARC S. SACKS
CHARLES E. CANTER
TERRANCE A. MEBANE
FRANCES M. MCLAUGHLIN
L. MISHA PREHEIM
PHILLIP M. SELIGMAN
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington D.C. 20044
Tel. (202) 307-1104
Fax (202) 514-9163
marcus.s.sacks@usdoj.gov

ATTORNEYS FOR THE UNITED
STATES

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 15, 2017, I electronically filed the foregoing UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ Marc S. Sacks
MARC S. SACKS
Commercial Litigation Branch
Civil Division
United States Department of Justice